IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GERALD KEITH MCWHORTER, ) | Civil Action No. 3:11-185-MGL-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") partially denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB and SSI on May 8, 2007, alleging disability as of April 13, 2007. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 21, 2009, at which Plaintiff (represented by counsel) appeared and testified. On November 3, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-six years old at the time of the ALJ's decision. He has a high school education, and past relevant work as a cook, dish washer, painter, and chemical production worker.

Plaintiff alleges disability due to fractures of his lower limbs; acute myocardial infarction requiring coronary artery bypass graft times two; fractured ribs and pelvis; carpal tunnel syndrome; and degenerative disk disease.

The ALJ found (Tr. 23-36):

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: fractures of the lower limb; acute myocardial infarction requiring coronary artery bypass graft times two; fractured ribs and pelvis; carpal tunnel syndrome; and degenerative disk disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant can occasionally climb ramps and stairs as well as ladders, ropes, and scaffolds, and crouch. Claimant can frequently balance, crawl, kneel, and stoop. Claimant can reach all directions including overhead; however, gross manipulation, fine manipulation, and feeling are limited on the left to frequent. Claimant has no communicative or visual limitations; and no environmental limitations except to avoid concentrated exposure to hazards. He is limited to simple, routine, repetitive tasks.

6. The claimant is not capable of performing past relevant work as a cook in the fast food industry. This work would require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). He is capable of performing other work as testified to by the vocational expert.

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f).

The Appeals Council granted Plaintiff's request for review, and in a partially favorable decision issued December 22, 2010, found that Plaintiff was disabled as of April 1, 2009 due to head and neck cancer.[1] The Appeals Council adopted the ALJ's findings that Plaintiff was capable of performing a limited range of sedentary work from his alleged onset date until April 1, 2009, and thus was not disabled during that (approximately two year) time period. See Tr. 1-8. The Appeals Councils became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on January 24, 2011.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] The Appeals Council noted that Plaintiff filed a subsequent claim for disability benefits on March 19, 2010, based on an October 2009 diagnosis of head and neck cancer.

3

**MEDICAL EVIDENCE**

On April 13, 2007, Plaintiff fell off a ladder while working and fractured both of his heels, both of his ankles, and his left wrist. He underwent surgeries as to his fractures on April 18, 2007. This included surgery on his right ankle/foot/heel (open reduction internal fixation, right talus with medial malleolar osteotomy, open reduction internal fixation right subtalar dislocation, closed reduction percutaneous pinning right calcaneus); left ankle/foot/heel (open reduction internal fixation left talus/talar fracture, open reduction internal fixation left calcaneus/caneal fracture); and left wrist (open reduction internal fixation and carpal tunnel release). Plaintiff was discharged from the hospital on May 1, 2007, at which time it was noted that Plaintiff's wounds were healing well, he was able to eat regularly, and his pain was controlled with medication. See Tr. 234-257, 347-387. Over the next few months, Plaintiff received follow-up treatment for his fractures. He complained of pain and some numbness in his fingers. Examinations revealed that Plaintiff's incisions looked goods, his fractures were well aligned, and there were no signs of broken hardware. Tr. 400-410, 699-702, 709-711.

Plaintiff was diagnosed with carpel tunnel syndrome in his left hand and wrist on June 6, 2007. Tr. 703-704. On July 18, 2007, Plaintiff was noted to have full range of motion of his wrist without pain. Tr. 713. Although Plaintiff complained of burning pain in his feet on July 27, 2007, he was noted to be doing very well. Tr. 714.

On August 11, 2007, State agency physician Dr. Frank Ferrell reviewed Plaintiff's medical records. Dr. Ferrell noted that Plaintiff had undergone successful surgeries on his feet, ankles, and left wrist; his fractures were healing; his hardware was aligned; and his rehabilitation was ongoing. Tr. 416-423. Dr. Ferrell opined that Plaintiff could occasionally lift and/or carry up to twenty

4

pounds; frequently lift and/or carry ten pounds; sit, stand and/or walk six hours each in an eight-hour workday; frequently balance, stoop, kneel, and crawl; occasionally climb and crouch; frequently handle, finger, and feel; reach in all directions and push and pull without limitation; and should avoid hazardous machinery due to his opiate and alcohol use. Tr. 416-423.

Dr. James K. Phillips, III, a psychologist, performed a consultative examination on August 28, 2007. Dr. Phillips noted that Plaintiff's medical records included one reference to depression, as well as evidence of alcohol abuse and positive test results for cocaine and opiates, but that Plaintiff did not have any history of psychiatric treatment. Dr. Phillips' impression was that Plaintiff had depression with accompanying anxiety. He opined that Plaintiff could learn and retain simple instruction; Plaintiff's attention and concentration were adequate; and Plaintiff could not work with the public or tolerate more than moderate workplace stresses. Tr. 426-428.

State agency psychologist Dr. Debra Price reviewed Plaintiff's medical records in September 2007. Dr. Price opined that, despite Plaintiff's depression with accompanying anxiety, his symptoms imposed only minimal limitations on his ability to carry out basic work activities. Tr. 429-441.

On September 17, 2007, Plaintiff underwent carpel tunnel release surgery on his left wrist. Tr. 450-467. Follow-up visits in September to October 2007 revealed that Plaintiff complained of pain and numbness in his feet and hands and requested pain medications. Physicians noted that Plaintiff's ankles were moving well, he was ambulating normally, and Plaintiff's requests for narcotic pain medications were denied on several occasions. Tr. 518-525, 529-535, 716-718.

In November 2007, Dr. Ferrell reviewed Plaintiff's medical records again. He noted that Plaintiff had successful carpel tunnel release. Dr. Ferrell issued an opinion similar to his earlier opinion regarding Plaintiff's physical capacity. Tr. 468-75.

5

On November 8, 2007, Plaintiff was treated at the hospital for complaints of chest pain, nausea, and vomiting. He was diagnosed with multi-vessel coronary artery disease, underwent left heart catheterization, and then underwent coronary artery bypass of two vessels. It was noted that Plaintiff was a heavy smoker (one and one half to two packs a day) and had a strong history of alcohol use, but that he reported he was down to a six pack of beer a day. He was discharged on November 21, 2007. Tr. 489-492. Plaintiff complained about a significant amount of incision pain on December 5, 2007, but was noted to be doing "quite well." Tr. 488. Examination on December 18, 2007, revealed that Plaintiff had normal lungs; normal heart rate and rhythm without murmur, gallop, or rub; and no edema. Tr. 660-663.

On April 3, 2008, Plaintiff complained to Dr. J. Thomas Anderson, an orthopedic surgeon, of severe pain in his ankles. Dr. Anderson noted that Plaintiff was ambulating well, but had decreased range of motion and discomfort. He noted that both of Plaintiff's heels turned slightly inward, but his scars were well-healed, and he had no calf swelling. Tr. 673-675. On May 29, 2008, Dr. Anderson reviewed a CT of Plaintiff's legs and opined that Plaintiff's fractures had healed, but Plaintiff had developed some arthritis in his ankles, feet, and left forearm. Tr. 679-681, see Tr. 676-678. It was recommended that Plaintiff get a spinal block to control his leg pain, which Plaintiff did in June 2008. Tr. 679-682, Tr. 685-686. On August 13, 2008, Plaintiff had additional surgery on his left ankle/foot (subtalar fusion). Tr. 685-686. During follow-up visits in August through December 2008, Plaintiff reported that he had no improvement in his pain, but Dr. Anderson noted that Plaintiff's reports were out of proportion and that Plaintiff complained of pain to even light touch. Tr. 687-696.

In January 2009, Plaintiff began treatment with Dr. David Shallcross for pain management. Dr. Shallcross prescribed Neurontin and Lortab. Tr. 722. On January 28, 2009, Dr. Shallcross noted that Plaintiff had a "slow and hesitant" gait; muscle atrophy below his knee; normal thigh muscles; normal reflexes; normal cervical, knee, and hip range of motion; and negative straight leg raises, but some tenderness and decreased range of motion in his lower back. Tr. 727-228. An MRI of Plaintiff's lumbar spine in February 2009 revealed some disc space narrowing on the right side, but no other evidence of disc herniation, stenosis, or narrowing. Tr. 723, 729.[2]

On February 17, 2009, Plaintiff began obtaining methadone from a methadone clinic. Clinic records indicate that Plaintiff used opiates every day, and reported an opiate drug addiction lasting one year. Additionally, Plaintiff reported he last used cocaine two weeks prior, and last used marijuana two days prior. Tr. 738-744.

Dr. Shallcross prescribed Neurotin and MS Contin (an opiate medication) to Plaintiff on February 25, 2009. Tr. 730. On March 25, 2009, Plaintiff was switched from MS Contin to Roxicodone (another opiate). Tr. 732. In June 2009, Dr. Shallcross opined that Plaintiff was stable since his last visit despite continued leg and foot pain, Neurontin and Roxicodone were fairly successful in controlling Plaintiff's pain, and Plaintiff's grip strength was intact. Tr. 733. Dr.

---

[2]In February 2009, Plaintiff complained to Dr. Joanne C. Skaggs of throat pain which continued over the next few months. Tr. 749-753, 763-778, 786-787; see Tr. 782-783, 794-797. As noted by the Appeals Council, Plaintiff was diagnosed with head and neck cancer in October 2009, and the Appeals Council found that Plaintiff was disabled due to his throat cancer beginning in April 2009. Tr. 5-8. In April 2010, Dr. Jay Walls, one of Plaintiff's treating physicians, completed a Cancer Medical Assessment form. Dr. Walls noted that Plaintiff began chemotherapy in October 2009, and was having an excellent response, but opined that Plaintiff was unable to work due to chemotherapy and radiation side effects. Tr. 822-824. Also in April 2010, Dr. Shirnett Matthews, another treating physician, completed the same form, but opined that Plaintiff's prognosis was "good," noted he had completed treatment, and opined that he was able to work full time without any restrictions related to his cancer treatment. Tr. 825-827.

Shallcross strongly encouraged Plaintiff to attend Alcoholics Anonymous for his alcohol problems, seek mental health care for anxiety, and noted that Plaintiff should continue taking medications to control pain. Dr. Shallcross opined that Plaintiff was incapable of returning to the work place. Tr. 733.

On September 8, 2009 (after the hearing before the ALJ), Dr. William W. Stewart, a board-certified vocational counselor, performed a vocational and rehabilitation evaluation at the request of Plaintiff's counsel. Dr. Stewart noted that Plaintiff had to give up many activities due to his injuries, but performed light dusting, straightening up, and cooking. Plaintiff reportedly was under house arrest for six months as a result of a criminal domestic violence conviction. Plaintiff denied any use of illicit or non-prescription drugs, and stated that he stopped using marijuana and cocaine in 2006. Tr. 810. Plaintiff was assessed as reading at a 7.5 grade level and doing math at a 7.4 grade level. Dr. Stewart opined that Plaintiff would only be qualified for manual jobs. On the Penn Bi-Manual Dexterity Worksample, Plaintiff scored below the second percentile, which Dr. Stewart opined was reflective of slow work speed and "descriptive of a worker with no ability to successfully compete for, perform, and sustain sedentary and light jobs that require a fast paced/production rate work speed." Dr. Stewart opined that without significant physical and psychological improvement, Plaintiff's prognosis for successful vocational rehabilitation to sedentary work was "quite poor to nonexistent" and Plaintiff would likely remain unable to work. Tr. 805-815.

## **HEARING TESTIMONY**

Plaintiff stated that he lived with his mother and spent 99 percent of his time sitting and watching television, and would sometimes take naps during the day. Tr. 43, 48-50, 52-53, 63. He said that his pain made it difficult to sleep or concentrate. Tr. 52-53. Plaintiff testified that he did

8

not do grocery shopping, household work, yard work, or any of his former hobbies. Tr. 49, 63. Plaintiff did not drive because he lost his drivers license as a result of a DUI in 1989 and had never renewed it. Tr. 56. Plaintiff did not have a cane or walker at the hearing, but stated he used a walker to walk long distances. Tr. 47. Plaintiff estimated he could stand a minute before having to sit down, and could walk no further than ten yards at a time. Tr. 50. Plaintiff stated that he had four lower back surgeries in the past, but continued to work thereafter as a painter until his 2007 fall aggravated his back pain. Tr. 69-70. Plaintiff testified that he had a gap in his earnings from 2002 to April 2007 because he worked "under the table." Tr. 57.

Plaintiff said he was discharged from Dr. Shallcross' practice because he sought treatment from a methadone clinic. Tr. 60-62, 71. Plaintiff said he went to the methadone clinic for treatment for his addiction to pain medications (specifically Lortab), which he denied use of since February 2009. Tr. 60-62. Plaintiff said that pain medications helped his pain a little, but his pain was still a nine on a scale of one to ten. Plaintiff stated that he drank beer on occasion and was a recovering alcoholic. He denied that he still drank heavily. Tr. 64-65.

## **DISCUSSION**

Plaintiff alleges that the Commissioner erred in: (1) failing to assign controlling weight to the opinions of his treating physician (Dr. Shallcross); (2) failing to consider the opinion of Dr. DeVault (presented to the Appeals Council); (3) mischaracterizing and misstating the record in significant aspects; (4) failing to properly address the opinion of Dr. Stewart and assess his vocational and rehabilitation status; and (5) failing to make adequate credibility findings. The Commissioner

9

contends that substantial evidence[3] supports the finding that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work and thus was not disabled prior to April 1, 2009; the ALJ reasonably evaluated the medical and vocational opinions; it was reasonable for the Appeals Council to adopt the ALJ's findings; and the ALJ reasonably found Plaintiff's subjective complaints of pain to be incredible.

A. <u>Substantial Evidence/RFC</u>

Plaintiff alleges that the ALJ committed reversible error by mischaracterizing and misstating the record in significant respects. He appears to argue that the ALJ did not include specific and detailed findings, and placed great weight on the findings of the State agency consultants who did not adequately consider Plaintiff's subjective complaints or the combined effects of Plaintiff's impairments. The Commissioner contends that substantial evidence supports the finding that Plaintiff retained the RFC to perform a limited range of sedentary work and that the ALJ fully complied with SSR 96-8p by assessing Plaintiff's RFC and providing sufficient reasons for Plaintiff's limitations.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(B), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

The ALJ's decision concerning Plaintiff's RFC is correct under controlling law and supported by substantial evidence. The ALJ discussed all of the medical evidence and nonmedical evidence at great length (see Tr. 24-35), and found that Plaintiff's many impairments limited Plaintiff to performing a reduced range of unskilled sedentary work. The ALJ specifically found that the RFC determination was supported by findings of State agency physician Dr. Ferrell (see Tr. 32-34). See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative

review."). The ALJ further reduced Plaintiff's RFC to accommodate Plaintiff's credible limitations. Tr. 35.

The ALJ also properly considered Plaintiff's combination of impairments. The ALJ specifically found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Tr. 23. The ALJ discussed all of Plaintiff's severe and non-severe impairments in the "Findings of Fact and Conclusions of Law section of his decision. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)(ALJ sufficiently considered impairments in combination when he separately discussed each impairments, the complaints of pain and daily activities, and made a finding that claimant's impairments did not prevent the performance of past relevant work). The ALJ also considered Plaintiff's combination of impairments in his hypothetical to the VE.

      B.     Treating Physician

Plaintiff alleges that the ALJ erred in declining to give the opinion of Dr. Shallcross great weight. The Commissioner contends that the ALJ reasonably evaluated the opinion of Dr. Shallcross and gave good reasons for declining to give the opinion great weight.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to

12

the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinion of Dr. Shallcross is supported by substantial evidence and correct under controlling law. Dr. Shallcross opined that Plaintiff was incapable of returning to the work place. Such an opinion on an issue reserved to the Commissioner and is not entitled to any special weight or significance. See 20 C.F.R. § 404.1527(d)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994). The ALJ found that Dr. Shallcross' treatment notes were contradicted by notes of Plaintiff's use of methadone, alcohol, and drugs. Tr. 35. As discussed further below, evidence of Plaintiff's use of illegal substances, making inconsistent statements about alcohol and drug use, and engaging in drug-seeking behavior undermined Plaintiff's credibility. This evidence in turn undermined his treating physician's opinion of disability that was based on Plaintiff's subjective allegations of disabling pain. The ALJ noted that Plaintiff claimed to Dr. Shallcross that prescribed opiates were helping him, yet he sought treatment from a methadone clinic at the same time he continued to seek opiates from Dr. Shallcross,

and he told different physicians different things to get drugs. Tr. 35. Plaintiff testified that Dr. Shallcross terminated Plaintiff as a patient because Plaintiff sought treatment at a methadone clinic. Tr. 60-62, 71.

Additionally, even though the treatment notes of Dr. Shallcross indicate that Plaintiff experienced ongoing foot and leg pain, the notes indicate that Plaintiff's pain management was fairly successful. See Tr. 33. Further, Dr. Shallcross did not put any restrictions on Plaintiff's physical activities, which was inconsistent with his opinion that Plaintiff was unable to work.

  C.  Opinion Evidence - Dr. Stewart

Plaintiff alleges that the ALJ erred in failing to properly address the opinion of Dr. Stewart and assess Plaintiff's vocational and rehabilitation status. He claims that the ALJ erred by not providing reasons for rejecting the opinion of Dr. Stewart. The Commissioner contends that the ALJ properly discounted Dr. Stewart's vocational opinion.

Dr. Stewart, a vocational counselor or consultant, is not an "acceptable medical source" and instead is considered a nonmedical "other source" along with teachers, spouses, relatives, and friends. See SSR 06-03p; 20 C.F.R. § 404.1513(a) and (d); 20 C.F.R.§ 404.1527. Thus, he is not a treating source whose medical opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513. Opinions from other medical sources, however, may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physician and mental restrictions. See SSR 06-03p. "[T]he case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. SSR 06-03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Here, the ALJ's analysis and rejection of Dr. Stewart's opinion is supported by substantial evidence and correct under controlling law. The ALJ specifically found that Dr. Stewart's opinion that the results of the Penn Bi-Manual Dexterity sample precluded Plaintiff's ability to sustain sedentary and light jobs was inconsistent with other evidence, including the treatment notes of Dr. Shallcross (which indicated intact grip strength) and other medical records (none of which documented bilateral hand problems and which indicated Plaintiff was right handed). Tr. 35, see Tr. 733. Plaintiff argues that Dr. Stewart's opinion is especially compelling because he testifies as a VE in other SSA hearings. Here, however, Dr. Stewart did not testify at the hearing where both parties could examine him concerning his opinion. The ALJ also discounted Dr. Stewart's opinion because he found that Dr. Stewart's opinion was contradicted by the notes concerning use of alcohol and drugs by Plaintiff. Additionally, Dr. Stewart's opinion that Plaintiff would likely be unable work is an opinion on an issue reserved to the Commissioner and is not entitled to any special weight or significance. See 20 C.F.R. § 404.1527(d)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir.1994).

D.  Appeals Council/Opinion of Dr. DeVault

Plaintiff alleges that the Appeals Council erred in failing to consider the opinion of Dr. William L. DeVault. He argues that the ALJ failed to consider this opinion and evidence, and erred in failing to give this opinion any weight. Dr. DeVault examined Plaintiff on October 20, 2009

(four days prior to the ALJ's decision).⁴ Dr. DeVault opined that Plaintiff had a permanent impairment of 46% to both his right and left legs, 32% to his left arm, and 13% to his lumbar spine. Tr. 818. Dr. DeVault also opined that Plaintiff was not able to hold gainful employment based on his current health problems, and that he should continue pain management with medication and seek psychological counseling. Tr. 816-819. The Commissioner contends that the Appeals Council properly considered the new evidence and found that it did not provide a basis for changing the ALJ's decision. Additionally, the Commissioner contends that a review of the record as a whole, including the additional evidence from Dr. DeVault, shows that the ALJ's decision remained supported by substantial evidence.

When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the ALJ's decision is supported by substantial evidence. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011); see Wilkins v. Secretary Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir.1991)(en banc). In Meyer, the Fourth Circuit held that it is not necessary for the Appeals Council to state reasons for its decision not to review the ALJ decision. When the Appeals Council receives additional evidence and denies review, the issue for the reviewing court becomes whether the ALJ's decision is supported by substantial evidence or whether a remand is necessary for the ALJ to consider the new evidence. In Meyer, the plaintiff's treating physicians had a policy not to provide opinion evidence for Social Security proceedings. Therefore, the ALJ was not provided with any opinions by treating physicians. After the issuance of the ALJ's decision, the claimant was able to obtain an opinion letter from his treating physician, and the

---

⁴There is no indication that this evidence was presented to the ALJ.

Appeals Council made the letter a part of the record but found that it did not provide a basis for changing the ALJ's decision. The Fourth Circuit remanded the case for further fact-finding because "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707.

Here, the Appeals Council expressly considered the additional evidence, but reasonably found that it did not provide a basis for changing the ALJ's decision related to the period prior to April 1, 2009. See Tr. 5. The new evidence is merely cumulative. The ALJ's decision is still based on substantial evidence in light of this opinion. Dr. DeVault's findings concerning Plaintiff's feet and ankles, left wrist, and lumbar spine were consistent with evidence already before the ALJ including the treatment notes of Dr. Anderson and Dr. Shallcross. The opinion of Dr. DeVault, who performed a one-time consultative examination, is not that of a treating physician and is not entitled to controlling weight. Further, Dr. DeVault's opinion that Plaintiff was not able to work is an issue reserved to the Commissioner and is not entitled to any special weight or significance. Additionally, Dr. DeVault stated that his belief that Plaintiff was not able to hold gainful employment was based on Plaintiff's current (as of October 30, 2009) health problems. This included not only the impairments Plaintiff had during the relevant time period (from his alleged onset date until he was found disabled on April 1, 2009), but also included his cancer diagnosis.

    E.    Credibility

Plaintiff alleges that the ALJ erred by failing to make adequate credibility findings concerning Plaintiff's testimony. The Commissioner contends that the ALJ reasonably found that Plaintiff's subjective complaints of disabling pain were not credible.

17

In assessing credibility, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's determination that Plaintiff's testimony was only credible to the extent it limited him to a reduced range of sedentary, unskilled work is supported by substantial evidence. The ALJ considered all of the evidence, both medical and nonmedical in making his credibility determination. In finding that Plaintiff's subjective complaints lacked credibility, the ALJ reasonably considered Plaintiff's inconsistent statements in the record concerning his use of alcohol and drugs (Tr. 35). See Mickles v. Shalala, 29 F.3d at 930. The ALJ also reasonably concluded that Plaintiff's credibility was reduced by his drug-seeking behavior (Tr. 35). Evidence of drug-seeking behavior is relevant to this inquiry. See Simila v. Astrue, 573 F.3d 503, 519-520 (7th Cir. 2009); Poppa v. Astrue, 569 F.3d 1167, 1171-1172 (10th Cir. 2009); Berger v. Astrue, 516 F.3d 539, 545-546 (7th Cir. 2008); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Kincaid v. Astrue, No. 4:07–CV–145–FL,

2008 WL 2891008, at *7 (E.D.N.C. July 25, 2008)(citing ALJ's consideration of, among other things, "evidence of drug-seeking behavior" as sufficient to support ALJ's credibility assessment). Further, a claimant's misuse of medications is a valid factor in an ALJ's credibility determinations. Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003).

Because the ALJ is able to observe the demeanor of a claimant during testimony regarding the severity of pain and symptoms, his credibility findings are entitled to great weight. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Courts will ordinarily only reject the ALJ's credibility findings if they "are based on improper or irrational criteria." Breeden v. Weinberger, 493 F.2d 1002, 1010 (4th Cir.1974).

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **AFFIRMED**.

Joseph R. McCrorey
United States Magistrate Judge

August 14, 2012
Columbia, South Carolina